56 CCPA

**The UNITED STATES, Appellant,**

v.

**MOORE INTERNATIONAL, INC., American Customs Brokerage Co., Inc., et al., Appellees.**

**Customs Appeal No. 5295.**

United States Court of Customs and Patent Appeals.

Nov. 14, 1968.

Edwin L. Weisl, Jr., Asst. Atty. Gen., Andrew P. Vance, Chief Customs Section, New York City, for the United States.

Glad & Tuttle, San Francisco, Cal. (Edward N. Glad, San Francisco, Cal., of counsel), for appellees.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND and BALD-WIN, Judges.

RICH, Judge.

This appeal is from the judgment of the United States Customs Court, First Division, 59 Cust.Ct., C.D., 3064, sustaining appellees' protests [1] and holding the imported articles to be dutiable as "articles not specially provided for, of wood" under Item 207.00, Tariff Schedules of the United States (TSUS), at 16⅔% ad valorem. Appellant contends that the merchandise was properly classified by the collector as "artificial fruit," dutiable at 42.5% ad valorem under Item 748.21, TSUS.

Seventeen samples of the imported articles, invoiced as "carved wooden fruit," are in evidence. All are stipulated to be in chief value of wood and each resembles in shape a fruit of common or exotic variety.[2] Each carving is identified on the invoices by the name of the fruit it resembles, viz., "apple," "pear," "lemon," "mango," "papaya," "atis," "balimbing," "banana," "Black Calamassi," "grapes," "black grapes," "sinkamas," "tamarind," "santol," "cashew nut," "makupa," and "strawberry." [3]

1. Protests 65/2566, 64/23136 and 64/23137 were consolidated for trial.

2. We will assume, as the parties appear to have done, that beans, garlic, and cashew nuts are "fruit." The question is not important here.

3. From the testimony it appears that an atis is a popular Philippine fruit called a hand grenade in this country, a balimbing is called a star fruit in Hawaii, a sinkamas is called a garlic in this country, a tamarind is called a bean in this country, and a santol is something like a lemon.

The carved articles vary considerably in color, from very light to very dark, but all appear to have the natural texture, grain, and color of the wood from which they are made.

The "grapes," "black grapes," and "makupa" are made from a number of wood pieces connected with leather "stems." Some of the carvings have small leather or twine "stems" and/or "leaves" attached while others are made entirely of wood of one-piece construction.

The Tariff Schedules involved, insofar as pertinent, read as follows:

TSUS Schedule 7, Part 7, Subpart B:

\* \* \* \* \* \* \* \*

Artificial flowers, trees, foliage, fruits, vegetables, grasses, or grains, parts of the foregoing, and articles made of the foregoing \* \* \*:

\* \* \* \* \* \* \* \*

748.21    Other .................................42.5% ad val.

\* \* \* \* \* \* \* \*

TSUS Schedule 2, Part 1, Subpart F:

\* \* \* \* \* \* \* \*

207.00    Articles not specially provided for, of wood .. 16⅔% ad val.

———◆———

Thus, the sole issue is whether the imports are "artificial fruits" within the common understanding of that term.[4]

The Customs Court summarized the testimony in part as follows:

Plaintiffs' witness [Moore] testified that he has been familiar with the merchandise at bar for 4 years or more, having first become familiar with this line of merchandise when his firm was surveying the market of monkeypod wood in the Philippines—"fruit carvings"—and that he decided that his company should have something to supplement its monkeypod wood line, something that would "effect an entirely wood motif" \* \* \*. Mr. Moore stated that he had become familiar with the uses his customers make of the various articles in question by visiting retail shops and seeing how they are displayed, and also by seeing them displayed in homes. He then testified that, in almost all cases, they are used on monkeypod wood trays or other types of wood trays \* \* \*. The witness stated that he had never seen them displayed in china or porcelain bowls and, further, that he has never seen real fruit displayed in monkeypod bowls \* \* \*. Plaintiffs' witness further stated that the color of the various articles is not that of the natural fruit of which they are carved to resemble \* \* \*.

4. At the very close of his oral argument before this court appellees' counsel referred to Headnote 1 of Schedule 7, Part 7, Subpart B, TSUS, as being applicable to exclude at least several of the involved carvings from Item 748.21. The portion of this headnote to which counsel referred reads as follows:

    1. The provisions of items \* \* \* 748.21 do not include—

    \*        \*        \*        \*        \*

    (ii) articles (other than individual parts, such as pistils, stamens, ovaries, petals, calyxes, leaves, and flower heads, fruits, or vegetables without stems and foliage) which have been obtained in one piece from stone, metal, wood, or other material by molding, stamping, carving, forging, or other process; \* \* \*. [Our emphasis.]

Since the applicability of this headnote was not urged below or in the briefs here, it is an issue not properly before this court.

On cross-examination, Mr. Moore agreed that the exhibits in question represent the natural fruit in shape or form and stated that, other than the fact that they are of wood and of wood color and texture, the items in question resemble the original fruit * * *. He then stated that in the stores where he had seen these items displayed and sold, the storekeeper in almost all cases described the merchandise as "wood carvings" and that he had never heard the items described as artificial fruits * * *.

[Defendant's witness, Short] * * * does a general importing business and operates the Bamboo Window, * * * [a store] in Honolulu, Hawaii. He stated * * * that he was familiar with and sells [eleven of] the items represented by plaintiffs' exhibits * * * and that he describes such items to his customers as "artificial fruits" and classifies them as such * * *. [Defendant's] * * * witness testified that all of the items that he sells are in the natural wood coloring. He was not sure whether * * * "Black Grapes" * * * was all natural wood or stained but stated, however, that the wood grain could be seen on it. [He] * * * further testified that, in selling such items in his store, they are normally kept with the wood items on display there, so usually but "not necessarily" they would be on a wood tray, but in any case a "wood motif" * * *.

Prefatory to its own discussion of the merchandise at bar, the court stated the following:

In determining whether or not an article is an artificial flower or fruit, it is the *per se* nature of the article and not the use to which it is put which controls its classification. (Morimura Bros. v. United States, 8 Ct.Cust.Appls. 111, T.D. 37223, and Hensel, Bruckmann & Lorbacher, Inc. v. United States, supra [47 Cust.Ct. 112, C.D. 2289].)

Appellant contends that it is clear from this statement that the court below, in its approach to the classification of the imported carvings, "ignored or * * * gave insufficient weight" to their suitability for the ornamental uses to which both the merchandise at bar and natural fruits are sometimes put. We cannot agree. Considered in the light of the cited Morimura Bros. and Hensel cases, we think this statement was included merely to evidence a recognition that an article suited to the ornamental uses to which natural fruit is sometimes put is not necessarily an "artificial fruit"; and, conversely, that an article may still be an "artificial fruit" in the tariff sense even though it is suited to non-fruit-like, as well as fruit-like, ornamental uses. Moreover, the court's summary of the testimony and its observation that "Neither 'closeness of simulation' by shape nor the use to which an item is put is alone determinative of the classification of articles" show that the court viewed the situation as a whole and gave consideration to all relevant factors, including the uses to which the involved carvings are suited.

Appellant's second main contention is that the *only* reason for questioning the original classification as "artificial fruit" is that the carvings are not the same *color* as the items of real fruit which they resemble in shape. Suffice it to say that we consider the situation here to be entirely analogous to that being considered in Marshall Field v. United States, 45 CCPA 72, at p. 81, C.A.D. 676 (1958), when we said (p. 81):

We believe that the common understanding of the term "artificial fruit" does not encompass such iron objects, particularly when their over-all color is that of oxidized iron so as to give the observer the distinct and immediate impression that it is a work of wrought iron, to be used where it is desired to add a touch of wrought iron to the interior decor, not where one would normally use real fruit or close imitations thereof in form and color.

As noted by the court below, "the samples are \* \* \* potent witnesses." They give the observer the distinct and immediate impression that they are nothing other than nicely finished, natural grain wood carvings, albeit they have fruit-like contours or shapes. They are used where it is desired to decorate with a wood motif. It is our opinion that in the common understanding of the expression, they are not "artificial fruit," notwithstanding that the kinds of fruit they simulate *only* in shape might be used for decoration and that the principal use of the imports is for decoration.

The judgment below is affirmed.

Affirmed.